## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **ORG HOLDINGS LTD.,** | ) | **CASE NO. 1:24-cv-00708** |
| | ) | |
| Plaintiff, | ) | **JUDGE J. PHILIP CALABRESE** |
| | ) | |
| v. | ) | |
| | ) | |
| **BMW FINANCIAL SERVICES NA, LLC**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>DEFENDANT BMW FINANCIAL SERVICES NA, LLC'S MOTION TO DISMISS</u>

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.  ALLEGATIONS IN THE COMPLAINT ........................................................... 2

    A.   Plaintiff's Lease Agreement ..................................................................... 2

    B.   The Accident and Insurance Proceeds ...................................................... 4

    C.   Plaintiff's Unjust Enrichment Claim ........................................................ 5

III. ARGUMENT ...................................................................................................... 5

    A.   The Complaint Fails to State a Claim for Relief and Must Be Dismissed
       under Rule 12(b)(6)................................................................................... 5

        1.   Legal Standard ............................................................................... 5

        2.   Under Ohio Law, There Is No "Unjust Enrichment" Claim Where
            The Claim Arises Out Of A Contract. ......................................... 6

        3.   Even If Not Barred As A Matter Of Law, Plaintiff Fails To Plead
            The Elements Of Its Unjust Enrichment Claim. ......................... 8

            (a)   Plaintiff Did Not Confer A Benefit On BMW FS Because It
                 Has No Ownership Interest In the Leased Vehicle Owned
                 By FSVT. ............................................................................ 8

            (b)   Any Benefit Conferred Was By Cincinnati Insurance, Not
                 By Plaintiff. ....................................................................... 12

        4.   Plaintiff's Complaint Should Be Dismissed With Prejudice
            Because Amendment Would Be Futile. ....................................... 13

    B.   The Complaint Fails To Join Required Parties And Must Also Be
       Dismissed Under Rule 12(b)(7). .............................................................. 13

        1.   Legal Standard ............................................................................. 13

        2.   FSVT And Cincinnati Insurance Are Required Parties Because
            They Claim An Interest In The Subject Of This Action And Failure
            To Join Them Would Impair Their Ability To Protect Their Own
            Interests. ....................................................................................... 15

        3.   Failure To Join FSVT Would Subject BMW FS To A Substantial
            Risk Of Incurring Double And/Or Inconsistent Obligations. ..... 18

        4.   Joinder of FSVT and Cincinnati Insurance Is Feasible. ............. 19

i

IV.    CONCLUSION...........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrego v. Dow Chem. Co.*,
    443 F.3d 676 (9th Cir. 2006) ..................................................................20

*Am. Greyhound Racing, Inc. v. Hull*,
    305 F.3d 1015 (9th Cir. 2002) ................................................................15

*Bates v. Green Farms Condominium Assn.*,
    958 F.3d 470 (6th Cir. 2020) ....................................................................6

*Deffren v. Johnson*,
    2021-Ohio-817 (1st Dist.) .........................................................................6

*Diei v. Boyd*,
    116 F.4th 637 (6th Cir. 2024) ...................................................................6

*Eade v. Wayland*,
    2012 WL 1155653 (N.D. Cal. Mar. 31, 2012)........................................18

*Greer v. Strange Honey Farm, LLC*,
    114 F.4th 605 (6th Cir. 2024) .................................................................13

*Holcomb v. N.W. Mut. Life Ins. Co.*,
    2011 WL 31774 (W.D. Wash. Jan. 4, 2011)......................................15, 18

*In re Home Am. T.V.-Appliance-Audio, Inc.*,
    193 B.R. 929 (D. Ariz. 1995)..................................................................18

*Keweenaw Bay Indian Community v. Michigan*,
    11 F.3d 1341 (6th Cir. 1993) .............................................................13, 14

*KN Excavation LLC v. Rockmill Brewery LLC*,
    2022-Ohio-3414 (5th Dist.) ......................................................................8

*Kottmyer v. Maas*,
    436 F.3d 684 (6th Cir. 2006) ..................................................................13

*Kovalchuk v. City of Decherd, Tennessee*,
    95 F.4th 1035 (6th Cir. 2024) ...................................................................6

*Kumar v. Ally Fin. Inc.*,
    2022 WL 16962283 (C.D.Cal. Oct. 17, 2022) .........................................9

iii

*Lassiter v. City of E. Cleveland,*
  2021 WL 12260884 (N.D. Ohio Oct. 29, 2021) .................................................13

*Lehigh Gas-Ohio, LLC v. Cincy Oil Queen City, LLC,*
  2016-Ohio-4611 (1st Dist.).....................................................................................6

*Loc. 670, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO v.
  Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-
  CIO,*
  822 F.2d 613 (6th Cir. 1987) ................................................................................14

*Maldonado- Viñas v. Natl. W. Life Ins. Co.,*
  862 F.3d 118 (1st Cir. 2017)..................................................................................19

*Meta v. Target Corp.,*
  74 F.Supp.3d 858 (N.D. Ohio 2015)......................................................................15

*ORG Holdings Ltd. v. BMW Fin. Servs. NA, LLC,*
  2025 WL 2419621 (6th Cir. Aug. 21, 2025)................................................16, 17, 18

*Porcu v. Geico General Insurance Company,*
  2024 WL 3746271 (S.D.Cal. Aug. 9, 2024) .....................................................10, 11

*Scott Co. v. Cent. Garden & Pet Co.,*
  2001 WL 506485 (S.D. Ohio Apr. 25, 2001) ........................................................14

*Sutter O'Connell Co. v. Whirlpool Corp.,*
  2019 WL 2469202 (N.D. Ohio June 13, 2019)..................................................6, 13

*Tarkett v. USAA General Indemnity Co.,*
  2024 WL 2925325 (S.D.Cal. June 10, 2024).....................................................9, 10

**Statutes**

28 U.S.C. 1332(d) ..........................................................................................................20

**Other Authorities**

Civil Rule 12(b)(7) ........................................................................................................13

Federal Rule of Civil Procedure 12(b)(6) ...........................................................1, 5, 6, 13

Federal Rule of Civil Procedure 12(b)(7) ...............................................................2, 13

Federal Rule of Civil Procedure 15(a) .........................................................................13

Lease, *Black's Law Dictionary* (11th Ed. 2019)...........................................................9

Local Rule 7.1(f) ............................................................................................................22

Rule 12(b)(7) ...........................................................................................................................15

Rule 12(c) .................................................................................................................................6

Rule 19 ...........................................................................................................................2, 13, 19

Rule 19(a) ................................................................................................................................14

Rule 19(a)(1) and (3) ..............................................................................................................19

Rule 19(b) ..........................................................................................................................14, 15

## I.    INTRODUCTION

This dispute arises out of a Motor Vehicle Lease Agreement (Closed end) (the "Lease") entered into between Plaintiff ORG Holdings Limited ("Plaintiff") and non-party BMW of Westlake, which was concurrently assigned to Defendant BMW Financial Services NA, LLC's ("BMW FS") affiliate, Financial Services Vehicle Trust ("FSVT"). Pursuant to the terms of the Lease, BMW FS administered the lease on behalf of FSVT. As relevant here, the Lease required Plaintiff to obtain an insurance policy and to name FSVT as an additional insured and loss payee under the policy. Consistent with this contractual obligation, Plaintiff insured the 2022 BMW M5 (the "Vehicle") with Cincinnati Insurance Company ("Cincinnati Insurance"), naming FSVT as the loss payee under the policy. Thereafter, the Vehicle was declared a total loss by Cincinnati Insurance following an accident. BMW FS, as administrator for the Lease and servicer for FSVT, received the insurance proceeds. Based on these allegations (which are not disputed), Plaintiff seeks to assert a single claim for unjust enrichment on behalf of itself and a nationwide class of others similarly situated. As detailed herein, Plaintiff's unjust enrichment claim fails as a matter of law and should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Disposing of the Complaint in its entirety, Plaintiff's claim is barred under Ohio law because its subject matter is covered by two express contracts—Plaintiff's Lease with FSVT and insurance policy with Cincinnati Insurance ("Insurance Policy"). Although Plaintiff strategically does not name either party in its Complaint, the Court should reject Plaintiff's effort to circumvent these binding agreements. Even if not barred as a matter of law (which it is), the Complaint also fails because Plaintiff does not plead the essential elements of an unjust enrichment claim. Plaintiff does not (and cannot) plead any ownership interest in the Vehicle (and by extension, the insurance

proceeds at issue) under the plain terms of the Lease and cannot plead that it conferred any benefit on BMW FS. Plaintiff's claim fails for these additional reasons.

The Complaint also should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join a required party under Rule 19. Cincinnati Insurance, as the party that paid out the insurance proceeds at issue, and FSVT, as the assignee under the Lease and the party that **actually held title** to the funds, are required parties that were not named in the Complaint. Cincinnati Insurance and FSVT both claim an interest in the subject of this action and failure to join them would impair their ability to protect their own interests. Moreover, BMW FS may incur double obligations in the event FSVT is not joined as a party. Because neither of these required parties has been joined, the Complaint should be dismissed pursuant to Rule 12(b)(7).

As amply demonstrated herein, BMW FS respectfully submits that the Court should grant this Motion and dismiss Plaintiff's Complaint with prejudice.

## II.  ALLEGATIONS IN THE COMPLAINT

### A.  <u>Plaintiff's Lease Agreement</u>

Plaintiff entered into the Lease with BMW of Westlake on August 31, 2021, for a lease term of thirty-six months. (Compl., ECF No. 1-1, PageID #12, ¶ 3; Lease, ECF No. 3-3, PageID #90, § 3.) That same day, the Lease was assigned by BMW of Westlake to FSVT. (*Id.*, PageID #97, § 41.) Pursuant to the Lease, BMW FS was charged to "administer" the Lease on behalf of the "assignee" of the Lease, FSVT:

> Unless otherwise specified, "I," "me" and "my" refer to the Lessee [Plaintiff here] and "you" and "your" refer to the Lessor or Lessor's assignee. . . . "Assignee" refers to BMW Financial Services NA, LLC ("BMW FS") or, if this box is checked ☑ to Financial Services Vehicle Trust. BMW FS will administer this Lease on behalf of itself or any assignee.

(Compl., ECF No. 1-1, PageID #12, ¶ 6; Lease, ECF No. 3-3, PageID #90, § 2.)

The Lease set forth the rights and obligations of Plaintiff and FSVT with respect to the Vehicle and Plaintiff's account, including the purchase option, termination, and insurance. Section 27 of the Lease provided Plaintiff with a limited option to purchase the Vehicle during the term of the Lease subject to its satisfying several requirements in advance (note that references to "I" refers to the customer and "you" refers to FSVT):

> **27.  Purchase Option.**  I have an option to purchase the Vehicle AS-IS, WHERE-IS.  If I want to buy the Vehicle, I will ***notify you in advance*** and ***agree to complete any documents you require*** for the purchase.  I also ***agree to re-register and re-title the Vehicle at my own expense in my name at the time I purchase it***. . . .At the Scheduled Termination of the Lease, the purchase price will be the Residual Value (Section 10.D).  Prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (Section 30).  In either case, ***I agree to also pay any other amounts due or outstanding under the Lease at the time of purchase*** such as any official fees, unpaid Monthly Payments or late charges.

((Emphases added.) *Id.* at § 27.)

Relatedly, Section 30 governed "Early Termination of the Lease" by the lessee and stated: "I may terminate this Lease at any time by purchasing the Vehicle (<u>Section 27</u>) or by returning the Vehicle to a location selected by you, if I am in full compliance with the Lease and satisfy all of my Early Termination obligations." (*Id.* at § 30.)

Section 24 of the Lease governed what would happen if the Vehicle was damaged or destroyed in an accident. Notwithstanding the purchase option, Section 24 provided FSVT with the right to terminate the Lease if such an accident occurred:

> **24.  Vehicle Loss or Damage.  *I agree to immediately notify you if the Vehicle is damaged or destroyed in an accident***, stolen, abandoned, or taken by a police or other governmental agency. ***In that event, you reserve the right to terminate this Lease*** and my liability will either be: (a) calculated under <u>Section 25</u> below, if I am in compliance with my insurance obligations; or (b) calculated under <u>Section 23</u> above, if I am not in compliance with my insurance obligations. . . ."

((Bold/italic emphases added.) *Id.* at § 24.)

3

Sections 20, 26, and 31 of the Lease governed, among other things, Plaintiff's insurance obligations with respect to the Vehicle and FSVT's exclusive right to the insurance proceeds after the carrier's total loss determination. Section 20 stated as follows:

> **20. Required Insurance.**  During the term of this Lease and until I return the Vehicle, I agree to maintain the following types and amounts of primary insurance: [listing types and amounts]. . . .The coverage **_will name you_** as an **_additional insured_** and **_loss payee_**. . . . **_You have the right to endorse my name on any insurance check or settlement you receive_**. You also have the right to speak to my insurance company about my insurance coverage….

((Bold/italic emphases added.) *Id.* at § 20.) Section 31 stated that FSVT will "receive" the "proceeds of the settlement of the insurance claim" from a total loss.[1] (*Id.* at § 31.) Section 26 granted FSVT power of attorney to "act on [Claimant's] behalf in insurance matters relating to the Vehicle, including, but not limited to, the power to endorse insurance proceeds checks or drafts on [her] behalf." (*Id.* at § 26.)

Consistent with the requirements of the Lease, Plaintiff insured the Vehicle with an Insurance Policy from Cincinnati Insurance and paid the required premiums. (Compl., ECF No. 1-1, PageID #13, §§ 10–11; Lease, ECF No. 3-3, PageID #92, §§ 17, 20.) Also consistent with the Lease, Plaintiff was required to (and did) name the lessor and assignee as an "additional insured and loss payee." (Lease, ECF No. 3-3, PageID #92, ¶ 20.).

**B.      The Accident and Insurance Proceeds**

---

[1] Section 25 of the Lease is the "'Gap Amount' Waiver" provision stating that, if the Vehicle is damaged or destroyed in an accident and declared a total loss by Plaintiff's insurer, then to the extent the actual cash value of the Vehicle on the date of the accident is less than the contractual balance on the Lease, Plaintiff would not owe FSVT that difference or "gap" to satisfy the balance. The Gap Amount Waiver is a benefit FSVT provides to its lessees; it is not a guaranty in reverse that any benefit **_FSVT_** realizes will transfer to the lessee. In this instance, there was no "Gap Amount" because, as discussed below, the actual cash value of the Vehicle was higher than the contractual balance on the Lease.

4

Plaintiff was involved in a serious accident on or about October 21, 2023, which resulted in the Vehicle's declaration by Cincinnati Insurance as a total loss. (Compl., ECF No. 1-1, PageID #15, ¶ 21.) At the time of the accident, Plaintiff alleges that it had made 28 of 36 payments under the Lease, and the payoff of the Vehicle was $83,256.32. (*Id.* ¶¶ 22–23.) On or about December 8, 2023, Plaintiff contends that it "attempted to tender the pay-off amount" for the Vehicle, but BMW FS "refused to permit" Plaintiff to purchase the Vehicle. (*Id.* ¶ 24.) As of January 9, 2024, the amount owed under the Lease was $81,781.04. (*Id.* ¶ 28.) BMW FS received $98,516.70 in insurance proceeds from Cincinnati Insurance, which was $16,735.66 in excess of the remaining lease obligation at that time. (*Id.* ¶ 30.)

### C. Plaintiff's Unjust Enrichment Claim

Plaintiff, on behalf of itself and a nationwide class of similarly situated persons, alleges that it conferred a benefit on BMW FS because it paid the premiums for its Insurance Policy and BMW FS received the full insurance proceeds, including amounts in excess of the amount owed on the Vehicle at the time of the loss. (Compl., ECF No. 1-1, PageID #21, ¶ 49.) Plaintiff contends that it has an economic interest in the Vehicle and had a right to benefit from that economic interest, including in the event of a total loss. (*Id.*, PageID #22, ¶¶ 50–51.) Because BMW FS retained the insurance proceeds in excess of the amounts owed under the Lease, Plaintiff argues that BMW FS received an unjust benefit in that amount. (*Id.*, PageID #22, ¶¶ 52–54.)

## III. ARGUMENT

### A. The Complaint Fails to State a Claim for Relief and Must Be Dismissed under Rule 12(b)(6).

#### 1. Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and to state a

'claim to relief that is plausible on its face.'" *Kovalchuk v. City of Decherd, Tennessee*, 95 F.4th 1035, 1037 (6th Cir. 2024), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] court considering a Rule 12(b)(6) motion may review exhibits attached to the complaint as well as "items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."

*Diei v. Boyd*, 116 F.4th 637, 643 (6th Cir. 2024), quoting *Bassett v. Natl. Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008). "Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised." *Sutter O'Connell Co. v. Whirlpool Corp.*, 2019 WL 2469202, *1 (N.D. Ohio June 13, 2019).[2]

### 2. Under Ohio Law, There Is No "Unjust Enrichment" Claim Where The Claim Arises Out Of A Contract.

Plaintiff's unjust enrichment claim fails as a matter of law because the subject matter of Plaintiff's claim is covered by an express contract—indeed, by two express contracts. "It is clearly the law in Ohio that an equitable action in quasi-contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact." *Deffren v. Johnson*, 2021-Ohio-817, ¶ 10 (1st Dist.); *see also Lehigh Gas-Ohio, LLC v. Cincy Oil Queen City, LLC*, 2016-Ohio-4611, ¶ 27 (1st Dist.) (same).

Plaintiff's claim against BMW FS arises entirely from the Lease and the Insurance Policy, no matter the spin advanced by Plaintiff. Underscoring this point are the allegations in the Complaint, which heavily rely on the Lease, making clear that the subject matter of the dispute is

---

[2] As required by the Court's Standing Order on Civil Procedures, BMW FS contemporaneously files its answer to the Complaint. As stated in the order, "the Court may construe any motion brought under Rule 12(b)(6) as a motion for judgment on the pleadings based on Rule 12(c)." The same legal standard applies under both rules. *See Bates v. Green Farms Condominium Assn.*, 958 F.3d 470, 480 (6th Cir. 2020) ("A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6).").

covered by the terms of the Lease. (Compl. ¶¶ 3, 6, 13–14, 22–24, 28–30, 49–50, 52–54.) Here, the purported liability of BMW FS alleged in the Complaint arises from its actions vis-à-vis the Lease taken as the administrator and servicer of the Lease and FSVT's agent. Plaintiff promised to maintain insurance that named FSVT as an additional insured and loss payee under the Lease and FSVT was explicitly authorized to endorse Plaintiff's name on insurance checks:

> **20.  Required Insurance.**  During the term of this Lease and until I return the Vehicle, I agree to maintain the following types and amounts of primary insurance: [listing types and amounts]. . . .The coverage ***will name you*** as an ***additional insured*** and ***loss payee***. . .  .. ***You have the right to endorse my name on any insurance check or settlement you receive***.  You also have the right to speak to my insurance company about my insurance coverage….

((Bold/italic emphases added.) Lease, ECF No. 3-3, PageID #92, § 20.)  Section 31 also stated that FSVT will "receive" the "proceeds of the settlement of the insurance claim" from a total loss. (*Id.* at § 31.) Moreover, Section 26 granted FSVT power of attorney to "act on [Plaintiff's] behalf in insurance matters relating to the Vehicle, including, but not limited to, the power to endorse insurance proceeds checks or drafts on [her] behalf." (*Id.* at § 26.) It was pursuant to these provisions of the Lease that BMW FS (as servicer for FSVT) received the insurance settlement proceeds from Plaintiff's insurance carrier. (*Id.* at § 20.)

Furthermore, Plaintiff conceded that its claim is covered by a contract in its appellate brief in this case before the Sixth Circuit. There, Plaintiff argued that the dispute alleged in the Complaint arises out of the Insurance Policy: "[Plaintiff] is entitled to the proceeds of an entirely separate agreement—an insurance policy that Plaintiff purchased with Cincinnati Insurance. [ ] Plaintiff's position is that because Plaintiff paid the premiums on that policy, it is entitled to the excess proceeds from that policy. [ ] The Lease is not an insurance policy. Defendant is not an insurer." (Brief of Plaintiff/Appellee ORG Holdings Ltd, Doc. 21, Case No. 24-3929 (6th Cir. Mar. 17, 2025), pg. 31.) By Plaintiff's own admission, the terms of the Insurance Policy itself govern

7

how its proceeds are distributed. Because those express contract terms, together with the Lease, cover the subject matter of Plaintiff's claim, the unjust enrichment claim fails as a matter of law.

### 3. Even If Not Barred As A Matter Of Law, Plaintiff Fails To Plead The Elements Of Its Unjust Enrichment Claim.

To prevail on an unjust enrichment claim, Plaintiff must plead and prove that: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) it would be unjust to allow the defendant to retain the benefit without payment to the plaintiff." *KN Excavation LLC v. Rockmill Brewery LLC*, 2022-Ohio-3414, ¶ 24 (5th Dist.). "The damages for unjust enrichment are the amount the defendant benefited." (Citation and internal quotation marks omitted.) *Id.*. "Unjust enrichment entitles a party only to restitution of the reasonable value of the benefit conferred." *Id.*

#### (a) Plaintiff Did Not Confer A Benefit On BMW FS Because It Has No Ownership Interest In the Leased Vehicle Owned By FSVT.

At its core, Plaintiff's claim for unjust enrichment is predicated on a finding that BMW FS somehow acted in contravention of the Lease by receiving the insurance proceeds for the value of the Vehicle. However, there can be no question based on the allegations in the Complaint and the plain text of the Lease that FSVT was entitled to the insurance proceeds, and that BMW FS—as administrator for the Lease on behalf of FSVT—was the sole lawful recipient of those funds.[3] Defeating Plaintiff's claim, Plaintiff does not (and cannot) plead that it had an ownership interest in the Vehicle under the Lease. Rather, the Lease is a lease agreement where the ***lessor*** retains ownership of the vehicle and grants temporary possession and use of the vehicle to the lessee in

---

[3] Whether the insurance proceeds were paid out to BMW FS or to FSVT has no bearing on the ultimate conclusion on Plaintiff's unjust enrichment claim.  The Lease makes clear that BMW FS is the administrator and servicer of the Lease, acting on behalf of FSVT. (Lease, ECF No. 3-3, PageID #90, § 2.)

exchange for rent, and at the end of the lease term, the lessee returns the property to the lessor.[4]

As a result, the lessee has **no** "equity" or ownership in a leased vehicle—the **lessor** is the vehicle's sole owner and the only party entitled to realize any gain or loss in its value. As a result, Plaintiff's claim for unjust enrichment—a claim based in equity—fails as a matter of law. Indeed, several federal judges recently dismissed similar claims, with plaintiffs recovering nothing.

In the first of these cases, *Kumar v. Ally Fin. Inc.*, 2022 WL 16962283, *3 (C.D.Cal. Oct. 17, 2022), the plaintiff entered into a lease agreement which provided him with an option to purchase the vehicle at the end of the lease. Plaintiff was involved in an accident that resulted in a total loss of the vehicle, which had appreciated to a value of approximately $10,000 more than the residual balance on the lease. Plaintiff brought a class action suit against the financial services company and various dealerships asserting certain claims similar to the one here. The Court dismissed all claims, holding:

> [T]he missing link in the chain is whether Plaintiff was entitled under the insurance policy to receive the insurance proceeds in the first place. As [insurance carrier] points out, "[t]hat Plaintiff had a contract for insurance of a lease vehicle does not lead to the conclusion that he was entitled to the benefit of all proceeds on a vehicle he did not own."

*Id.* at *3.

Next, in *Tarkett v. USAA General Indemnity Co.*, 2024 WL 2925325 (S.D.Cal. June 10, 2024), the plaintiff leased a vehicle from BMW FS. As required by the lease agreement, the plaintiff purchased an automobile insurance policy that provided physical damage and collision coverage for the vehicle. Similar to Plaintiff here, the plaintiff in Tarkett was involved in a traffic accident and the insurance carrier declared the vehicle to be a total loss and paid the insurance

---

[4] *See* Lease, *Black's Law Dictionary* (11th Ed. 2019) (A lease agreement "grant[s] the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration.").

proceeds (including equity) to BMW FS. Plaintiff alleged that the insurance proceeds should have been paid to him rather than to BMW FS and filed suit against the insurance carrier asserting various statutory and common law claims against the insurance carrier. The court dismissed all of the claims on a pleading challenge and held, as relevant here:

> Plaintiff fails to allege any facts in his amended complaint that he has an equity interest in the totaled vehicle and thus, was entitled to the equity surplus of the total loss payout. . . . Indeed, while Plaintiff's lease agreement with BMW provides for a purchase option, . . . Plaintiff does not allege that he exercised such option. . . . Just because Plaintiff had a contract for insurance of a lease vehicle does not lead to the conclusion that he was entitled to the benefit of all proceeds on a vehicle he did not own.

(Citation and internal quotation marks omitted.) *Id.* at *4. Here, as in Tarkett, Plaintiff does not allege that it exercised its option to purchase the Vehicle, but rather that it "attempted to tender the pay-off amount." (Compl. ¶ 24.) Nor does Plaintiff otherwise plead that it has an equity interest in the Vehicle. Instead, Plaintiff alleges that since it "[paid] the insurance premiums, upon a loss of the Leased Vehicle, it is reasonable to expect that Plaintiff . . . will receive payment of the insurance proceeds (subject, of course, to the obligation to pay the balance due under the lease)." (Compl. ¶ 15.) Plaintiff further alleges that "[t]he purpose of Plaintiff purchasing the insurance coverage on the Lease Vehicle was not to grant Defendant a windfall in a Positive Gap situation, but so Plaintiff could benefit from the amount by which the ACV of the Leased Vehicle exceeded the payoff." (Compl. ¶ 25.) However, as the Court in Tarkett concluded, the mere fact that Plaintiff purchased a contract for insurance of the Vehicle—***which it did not own***—does not lead to the conclusion that it was entitled to benefit from the proceeds when the Vehicle was declared a total loss.

Similarly, in *Porcu v. Geico General Insurance Company*, 2024 WL 3746271 (S.D.Cal. Aug. 9, 2024), plaintiff leased a vehicle from BMW FS with a similar lease-end purchase option. Again, like here, the vehicle was in an accident and the insurance carrier declared it to be a total loss. Plaintiff disputed that BMW FS was entitled to the equity payment under the insurance policy,

10

and sued Geico for alleged statutory violations and common law claims. On defendant's motion to dismiss, the Court held that payment of the insurance proceeds to BMW FS pursuant to the Loss Payable Clause of the lease agreement was permissible because BMW FS was both a lienholder and an additional insured, explaining:

> Most importantly, Plaintiff fails to allege any facts that he has an equity interest in the totaled car and was therefore entitled to the equity surplus of the total loss payout. . . . In fact, while Plaintiff's lease agreement with BMW provides for a purchase option, he does not allege exercising that option.

*Id.* at *3. The same conclusion should be reached here. Plaintiff does not allege that it exercised its option to purchase the Vehicle, but rather that it "attempted to tender the pay-off amount." (Compl. ¶ 24.) Plaintiff alleges that "[s]ince it is Plaintiff . . . who pay[s] the insurance premiums, upon a loss of the Leased Vehicle, it is reasonable to expect that Plaintiff . . . will receive payment of the insurance proceeds (subject, of course, to the obligation to pay the balance due under the lease)." (Compl., ECF No. 1-1, PageID #13, ¶ 15.) But Plaintiff fails to allege how it is "reasonable" for it to expect payment of the insurance proceeds when it has no equity interest in the Vehicle and, therefore, had no legal reason to expect such payment.

Most recently, in *Connor v. BMW of North America, LLC and BMW Financial Services NA, LLC*, Cal. Super. Ct., Cty. of San Francisco, Case No. CPF-25-519303, Dkt. 1 ("Petition to Confirm Contractual Arbitration Award"), on essentially identical claims arising out of an identical lease agreement, Hon. David I. Brown (Ret.) rejected the lessee's unjust enrichment claims (among others) against BMW FS brought in arbitration. Claimant alleged that BMW FS wrongfully denied her right to purchase the vehicle under the subject lease agreement and kept the excess insurance proceeds to which claimant asserted entitlement. *Id.* at 4. Equally applicable here, the Final Award in BMW FS's favor read as follows:

> The plain language of the Lease establishes that BMW FS was the owner of the vehicle, having been assigned "all rights, title and interest in the Vehicle and the Lease." As the owner, BMW FS was properly designated as the loss payee and additional insured on the insurance policy, entitling it to receive the full insurance proceeds following the total loss. Parenthetically, had the vehicle depreciated in value, under the facts of this case, BMW would have had to absorb that loss. . . . There can be no conversion, unjust enrichment or misrepresentation or deceit where the Respondent(s) lawfully exercised its rights under the Lease Agreement to obtain monies due.

*Id.* at 23-24. The Lease here contains the same "plain language," compelling the same conclusion in favor of BMW FS.

### (b)     Any Benefit Conferred Was By Cincinnati Insurance, Not By Plaintiff.

Even if Plaintiff had an ownership interest in the Vehicle (which it did not), here the alleged "benefit" conferred on BMW FS came not from Plaintiff, but rather from Cincinnati Insurance pursuant to the terms of the Lease and the Insurance Policy. (*See* Compl., ECF No. 1-1, PageID #15, ¶ 21 ("As a result of the accident, the Leased Vehicle was declared a total loss by Plaintiff's insurance carrier, requiring the insurance carrier to pay the actual cash value . . . of the destroyed vehicle."); id., PageID #16, ¶ 30 ("Defendant received $98,516.70 in insurance proceeds.").) Thus, the Complaint fails to allege an essential element of Plaintiff's claim. There is nothing "unjust" about BMW FS's receipt and retention of the insurance proceeds pursuant to the arrangements with Cincinnati Insurance. The plain terms of the Lease provide for the lessor and its assignee— here, FSVT—to be named as an "additional insured and loss payee." (Lease, ECF No. 3-3, PageID #92, ¶ 20.) BMW FS, as the administrator and servicer of the Lease on FSVT's behalf, was entitled to the payment by Cincinnati Insurance. That payment is not unjust; ***indeed, it is required by the Lease terms agreed upon by Plaintiff***.

Plaintiff rests much of its unjust enrichment claim on the alleged statements made in BMW FS's SEC filings. (Compl., ECF No. 1-1, PageID #14–17, ¶¶ 17–18, 30–31.) Nowhere, however,

12

does Plaintiff allege that it relied on those SEC filings at any point during its dealings with BMW FS, nor explain their purported relevance to the claim here.

### 4. Plaintiff's Complaint Should Be Dismissed With Prejudice Because Amendment Would Be Futile.

"Under Federal Rule of Civil Procedure 15(a), a district court should freely grant a plaintiff leave to amend a complaint 'when justice so requires.' A district court may deny a plaintiff leave to amend his or her complaint, however, when the proposed amendment would be futile." (Citations omitted.) *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006); *see also Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024) (affirming district court's denial for leave to amend where amendment would be futile). Because there are no amendments that would change the plain terms of the Lease or the parties' rights or obligations thereunder, the Court should dismiss the Complaint *without* leave to amend.

### B. The Complaint Fails To Join Required Parties And Must Also Be Dismissed Under Rule 12(b)(7).

#### 1. Legal Standard

"Pursuant to Federal Rule of Civil Procedure 12(b)(7), a Defendant may move to dismiss a Complaint for failure to join a party under Federal Rule of Civil Procedure 19." *Lassiter v. City of E. Cleveland*, 2021 WL 12260884, *1 (N.D. Ohio Oct. 29, 2021). "In a Motion to Dismiss under Rule 12(b)(7), just as is the case under Rule 12(b)(6), the Court accepts Plaintiff's allegations as true and draws all reasonable inferences in his favor." *Id.*

"When reviewing a motion to dismiss pursuant to Civil Rule 12(b)(7), the Sixth Circuit applies a three-part test." *Sutter O'Connell*, , 2019 WL 2469202, at *5, citing *Keweenaw Bay Indian Community v. Michigan*, 11 F.3d 1341, 1345-1346 (6th Cir. 1993). "The court must first determine whether a person is necessary to the action and should be joined if possible." *Keweenaw*

*Bay Indian Community* at 1345. Rule 19(a) provides the following framework for who must be joined as a party if feasible:

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). "If the court finds that the absent person or entity falls within either one of these provisions, the party is thus one to be joined if feasible. The court must then consider steps two and three: the issues of personal jurisdiction and indispensability." *Keweenaw Bay Indian Community* at 1345.

> If personal jurisdiction is present, the party *shall* be joined; however, in the absence of personal jurisdiction (or if venue as to the joined party is improper), the party cannot properly be brought before the court. If such is the case, the court proceeds to the third step, which involves an analysis of the factors set forth in Rule 19(b) to determine whether the court may proceed without the absent party or, to the contrary, must dismiss the case due to the indispensability of that party.

*Loc. 670, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO*, 822 F.2d 613, 618 (6th Cir. 1987); *see also Scott Co. v. Cent. Garden & Pet Co.*, 2001 WL 506485, *2 (S.D. Ohio Apr. 25, 2001) ("If the party is necessary and can be joined, the Court must then consider issues of personal jurisdiction and indispensability. If the Court has personal jurisdiction, the person shall be joined.

14

If, however, personal jurisdiction is lacking or, if venue as to the person is improper, the Court must then proceed with an analysis under Rule 19(b)." (Citation omitted.)).

"To sufficiently assert a 12(b)(7) motion, the movant must identify the name of the party, the location of the party, the reason the party is necessary and whether the court has jurisdiction over the party." *Meta v. Target Corp.*, 74 F.Supp.3d 858, 866 (N.D. Ohio 2015), quoting *Jam Tire, Inc. v. Harbin*, 2014 WL 4388286, *4 (N.D. Ohio Sept. 5, 2014). "Moreover, under Rule 12(b)(7), [defendant] has the burden to show the nature of the unprotected interests of the absent individuals or organizations and the possibility that the court will be disadvantaged by their absence." *Meta* at 866, quoting CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE VOL. 5A, § 1359 (3d. Ed., West 1997).

> **2. FSVT And Cincinnati Insurance Are Required Parties Because They Claim An Interest In The Subject Of This Action And Failure To Join Them Would Impair Their Ability To Protect Their Own Interests.**

FSVT, as the assignee of the Lease, and Cincinnati Insurance, as the party that paid out the insurance payoff at issue, both have a substantial interest in this action. A substantial interest may "aris[e] from terms in bargained contracts." *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023 (9th Cir. 2002). Likewise, "[a] fixed fund which a court is asked to allocate may create a protectable interest in beneficiaries of the fund." (Citation and internal quotation marks omitted.) *Holcomb v. N.W. Mut. Life Ins. Co.*, 2011 WL 31774, *2 (W.D. Wash. Jan. 4, 2011).

Under the terms of the Lease, FSVT was the assignee of the Lease and BMW FS was tasked with administering and servicing the Lease on behalf of FSVT.[5] (Declaration of Philip Hornish ("Hornish Decl.") ¶ 4.) BMW FS is an indirect finance and sales company, which accepts

---

[5] BMW FS's records reflect that Plaintiff entered into a BMW Financial Services NA, LLC Motor Vehicle Lease Agreement (Closed End) for the lease of the Vehicle on August 31, 2021 (the "Account"). (Hornish Decl. ¶ 4.)

assignment of installment sales and lease contracts from originating automotive dealers, as well as administers and services lease contracts for FSVT.[6] (*Id.* ¶ 1.) As the Sixth Circuit noted, FSVT "worked to facilitate asset-backed securitization of BMW leases such as the one signed by Plaintiff." *ORG Holdings Ltd. v. BMW Fin. Servs. NA, LLC*, 2025 WL 2419621, at *1 (6th Cir. Aug. 21, 2025). As highly relevant here, all FSVT lease accounts (including the Account) are booked and accounted for as part of the FSVT portfolio while the lease accounts are active or have an open balance. (Hornish Decl. ¶ 5.) All cash activities relating to FSVT lease accounts (including the Account) flow through a bank account in the name of BMW FS, as the servicer for FSVT. (*Id.* ¶ 6.)

Upon receipt of an insurance settlement payoff following a total loss, the proceeds are recorded as BMW FS cash and deposited into a bank account in the name of BMW FS, as the servicer for FSVT. (*Id.* ¶ 7.) Each securitized asset is flagged to ensure that the collections activity associated with each asset is properly captured and reported via monthly asset-backed securities ("ABS") servicing application. (*Id.*) Although the cash flows through BMW FS bank accounts, it is allocated as FSVT proceeds, both from a receivable's perspective (customer payments) and a gain/loss perspective (payoffs / auction sales). (*Id.*)

The application of the insurance payoff results in termination of the lease account and creates additional entries to clear the Net Book Value ("NBV") of the lease from the FSVT balance sheet. (*Id.* ¶ 8.) The difference between cash and NBV is thereafter recorded to an FSVT gain/loss balance sheet. (*Id.*) Any overage or shortage is then moved from the FSVT gain/loss balance sheet

---

[6] FSVT is a Delaware statutory trust, with BMW Manufacturing LP, an Indiana limited partnership, as its sole beneficiary. (Hornish Decl. ¶ 1.) BMW Manufacturing LP has two partners—BMW FS and BMW Facility Partners, LLC. (*Id.*) BMW Facility Partners, LLC, which is a Delaware limited liability company with a single member: BMW FS (*Id.*)

to the FSVT income statement. (*Id.*) If a customer whose vehicle was involved in a total loss is offered loyalty payment credits ("Loyalty Credit") toward the purchase or lease of a new vehicle with BMW FS, and the customer redeems such credits, a deduction in the amount of the Loyalty Credit is recorded on the FSVT balance sheet. (*Id.* ¶ 9; Compl., ECF No. 1-1, PageID #17, ¶ 34.) In other words, although BMW FS ***technically*** receives the cash flow related to insurance payoffs, ***the entirety of the funds is allocated as FSVT proceeds***. FSVT thus unquestionably claims an interest relating to the subject of this action, as the insurance proceeds related to Plaintiff's Account and those of putative class members all are FSVT proceeds. Further, as the Sixth Circuit recognized, "[b]ecause Plaintiff states that BMWFS kept those excess proceeds, BMWFS's alleged conduct stems from the business relationship created by the Lease." *ORG Holdings Ltd.*, 2025 WL 2419621, at *6 (cleaned up). That business relationship created by the Lease is between Plaintiff and FSVT.

Similarly, Cincinnati Insurance also claims an interest relating to the subject of this action because it is the party that paid out the funds to BMW FS pursuant to the Insurance Policy mandated by the Lease. Indeed, Plaintiff conceded as much in its appellate brief before the Sixth Circuit. There, Plaintiff argued that the dispute here arises out of the Insurance Policy: "[ORG] is entitled to the proceeds of an entirely separate agreement—an insurance policy that Plaintiff purchased with Cincinnati Insurance. [] Plaintiff's position is that because Plaintiff paid the premiums on that policy, [it] is entitled to the excess proceeds from that policy. [] The Lease is not an insurance policy. Defendant is not an insurer." (Brief of Plaintiff/Appellee ORG Holdings Ltd, Doc. 21, Case No. 24-3929 (6th Cir. Mar. 17, 2025), pg. 31.) The Sixth Circuit repeated that assertion in its analysis, noting that "Plaintiff asserts that these excess proceeds relate to 'an entirely separate agreement,' namely, the insurance policy Plaintiff purchased with Cincinnati

17

Insurance Company (the insurer named in the Lease)." *ORG Holdings Ltd.*, 2025 WL 2419621, at *6. Based on Plaintiff's own admission, therefore, Cincinnati Insurance is a necessary party to this action.

Furthermore, unless joined as parties, FSVT and Cincinnati Insurance cannot effectively protect their own contractual interests in both the Insurance Policy and the Lease. (Doc. 3-3.) Absent joinder, both parties will be deprived of the opportunity to litigate their own respective interests, which are aligned with—but not identical to—BMW FS's. *See Holcomb*, 2011 WL 31774, at *2 (holding insurer "ha[d] no interest in whether the benefits are paid to" party claiming entitlement, or another party claiming entitlement to a percentage of those same benefits).

### 3. Failure To Join FSVT Would Subject BMW FS To A Substantial Risk Of Incurring Double And/Or Inconsistent Obligations.

As explained above, FSVT holds title to the insurance proceeds paid by Cincinnati Insurance and to other insurance proceeds related to lease accounts included in Plaintiff's putative class. (Hornish Decl. ¶¶ 7–9.) But Plaintiff seeks an order mandating that **BMW FS** pay Plaintiff (and potentially myriad other alleged putative class members) funds to which it has no title. Thus, unless FSVT is joined as a party, BMW FS runs the risk of incurring "double obligations"—having passed title to the insurance proceeds to FSVT and potentially being ordered to pay out those same amounts to Plaintiff (and the putative class). *See Eade v. Wayland*, 2012 WL 1155653 (N.D. Cal. Mar. 31, 2012) (finding trust beneficiaries necessary parties because trust could otherwise incur multiple obligations for the same funds); *Holcomb* at *2 (finding "clear risk of inconsistent rulings" where three pending suits sought allocation of the same benefits); *In re Home Am. T.V.-Appliance-Audio, Inc.*, 193 B.R. 929, 934 (D. Ariz. 1995) (finding joinder necessary to avoid "double obligation" for the government if different courts allowed two parties to claim the same

tax credit in separate litigations, explaining "[s]ubjecting [a party] to such a threat of double obligations is the prototypical type of situation that Rule 19 is meant to avoid").

The court's order in *Maldonado- Viñas v. Natl. W. Life Ins. Co.*, 862 F.3d 118 (1st Cir. 2017), is instructive. There, three immediate family members of a decedent sued a life insurance company to invalidate two life insurance annuity policies that had named the decedent's brother as the beneficiary. At the time of the lawsuit, the insurance company had already paid the brother as the annuity beneficiary. The court held that the brother was a necessary party, even though the insurance company had already paid him. If the policies were deemed invalid, the insurance company would be required to return the premium payments paid by the decedent, but the brother would retain the annuity payments he had already received. The court reasoned that failure to join that party could increase the insurance company's potential liability from the incident, explaining that "[t]he issue is not that two courts may reach inconsistent conclusions, it is that by reaching those conclusions, [the insurance company] may be subject to double obligations." *Id.* at 121–122. There, the beneficiary was a necessary party under Rule 19 because it "is the object of courts to prevent the payment of any debt twice over." *Id.* at 122.

Similarly here, failure to join FSVT may subject BMW FS to double payment. BMW FS has transferred title to the funds at issue to FSVT. As a result, a judgment in favor of Plaintiff (and/or a putative class) would require BMW FS to satisfy such a judgment with its own funds outside the context of insurance proceeds at issue. For the foregoing reasons, FSVT and Cincinnati Insurance are both required parties under Rule 19.

### 4. Joinder of FSVT and Cincinnati Insurance Is Feasible.

Joinder of the proposed additional parties is feasible. Rule 19(a)(1) and (3) state joinder is not feasible if: (1) the party is not subject to service, (2) the party would destroy subject-matter jurisdiction, or (3) venue is improper. Nothing in the Complaint suggests that FSVT and Cincinnati

19

Insurance are not subject to service of process. *Contra* Compl. ¶¶ 1–70. Because the Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332(d), (Notice of Removal), and the requisite minimal diversity exists, *id.*, the citizenship of additional parties would not deprive this Court of subject-matter jurisdiction. *See Abrego v. Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006) (reflecting minimal diversity requirement). Finally, there appears to be no valid objection to venue in this Court.

## IV.    CONCLUSION

For the foregoing reasons, BMW FS respectfully requests that Plaintiff's Complaint be dismissed without leave to amend.

Respectfully submitted,

*/s/ Julia B. Strickland*

James W. Sandy (0084246)
McGlinchey Stafford
3401 Tuttle Rd, Ste 200
Cleveland, OH 44122
Telephone: (216) 378-9911
Facsimile: (216) 378-9910
jsandy@mcglinchey.com

Julia B. Strickland (*pro hac vice*)
jstrickland@steptoe.com
Julieta Stepanyan (*pro hac vice*)
jstepanyan@steptoe.com
Adam R. Hoock (*pro hac vice*)
ahoock@steptoe.com
**STEPTOE LLP**
2029 Century Park East, Suite 1800
Los Angeles, CA 90067
Telephone: +1 213 439 9400
Fax: +1 213 439 9599
docketing@steptoe.com

*Counsel for Defendant BMW Financial Services NA, LLC*

21

## CERTIFICATE OF COMPLIANCE

I hereby certify that this case has not been assigned to any track and this ***Defendant BMW Financial Services NA, LLC's Motion to Dismiss*** adheres to the page limitations set forth in Local Rule 7.1(f) and to the word limits set forth in Paragraph 9.A.i. of Judge Calabrese's Standing Order on Civil Procedures.

By: */s/ Julia B. Strickland*
Julia B. Strickland (pro hac vice)

## CERTIFICATE OF SERVICE

**I CERTIFY** that a true and accurate copy of the foregoing ***Defendant BMW Financial Services NA, LLC's Motion to Dismiss*** was served upon the following via this Court's Electronic Filing System this 10th day of October, 2025:

Frank A. Bartela
Dworken & Bernstein - Painesville
60 South Park Place
Painesville, OH 44077
440-352-3391
fbartela@dworkenlaw.com
*Counsel for Plaintiff*

James A. DeRoche
Garson Johnson
2nd Floor Van Roy Building
2900 Detroit Avenue
Cleveland, OH 44113-2710
jderoche@garson.com
*Counsel for Plaintiff*

Patrick Perotti, Esq.
Dworken & Bernstein Co., LPA
60 South Park Place
Painesville, OH 44077
pperotti@dworkenlaw.com
*Counsel for Plaintiff*

*/s/ Julia B. Strickland*
Julia B. Strickland (pro hac vice)

22