**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ORG HOLDINGS LTD.,<br><br>Plaintiff,<br><br>v.<br><br>BMW FINANCIAL SERVICES NA, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:24-cv-00708<br><br>Judge J. Philip Calabrese |

**OPINION AND ORDER**

Plaintiff ORG Holdings Ltd. sued the administrator of its lease agreement, individually and on behalf of all others similarly situated, in State court. Plaintiff claims that Defendant BMW Financial Services NA, LLC was unjustly enriched when it retained "excess insurance proceeds" belonging to ORG Holdings. Defendant moves to dismiss for failure to state a claim for unjust enrichment and for failure to join two parties, Cincinnati Insurance and Financial Services Vehicle Trust. Also, Financial Services Vehicle Trust moves to intervene. For the reasons that follow, the Court **DENIES** Financial Services Vehicle Trust's motion to intervene and **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss.

**STATEMENT OF FACTS**

On August 31, 2021, Plaintiff ORG Holdings Ltd. entered into a vehicle lease agreement with BMW of Westlake and its assignee Financial Services Vehicle Trust, neither of which is not a party to this litigation. (ECF No. 1-1, ¶ 3, PageID #12; ECF

No. 3-3, PageID #90; ECF No. 26, PageID #284.) Defendant BMW Financial Services NA, LLC ("BMW FS") administered the lease. (ECF No. 3-3, § 2.1(a), PageID #66; ECF No. 26, PageID #284–85.)

On October 21, 2023, the vehicle that ORG Holdings leased was involved in a serious car accident that resulted in its total loss. (ECF No. 1-1, ¶¶ 20–21, PageID #15.) The lease addresses a total loss where there is a gap between the insurance proceeds and the amount owed under the lease. (ECF No. 3-3, ¶ 25, PageID #93.) However, it is silent on the opposite circumstance—where the insurance pays more than the amount due under the lease. (*Id.*; ECF No. 1-1, ¶ 13, PageID #13.) Plaintiff alleges that it owed $81,781.04 under the lease at the time of the accident. (ECF No. 1-1, ¶ 28, PageID #16.) Insurance paid BMW FS $98,516.70 for the loss of the vehicle. (*Id.*, ¶ 30, PageID #16.) BMW FS retained that excess payment of $16,735.66. (*Id.*)

As part of the lease, ORG Holdings agreed to maintain insurance that named Financial Services Vehicle Trust as an additional insured and payee for any loss. (ECF No. 30-3, ¶ 20, PageID #92–93.) In the event of a total loss, the lessor (or its assignee) has the right to terminate the lease, which has two different methods for calculating any remaining liability on the lessee, depending on whether the lessee is in compliance with its insurance obligations. (*Id.*, ¶ 24, PageID #93.) Where, as here, the lessee has insurance that complies with its obligations under the lease, ORG Holdings "will not be obligated to pay the gap amount (the difference between the Adjusted Lease Balance and the actual cash value of the Vehicle as of the date of loss)

if the claim for total loss is actually paid to you by my insurance company." (*Id.*, ¶ 25.) Also, the lease allows ORG Holdings to terminate the lease early by purchasing the vehicle and electing one of two methods for calculating the purchase price. (*Id.* ¶ 30, PageID #94.)

In the event of a total loss, the lease has particular rules for calculating the price for early termination of the lease by the lessee:

> **Realized Value of the Vehicle.** For the purpose of calculating my Early Termination liability, the Realized Value of the Vehicle is (a) the price you receive for the vehicle upon disposition in a commercially reasonable manner or (b) a price agreed to by you and me in a separate writing. If the Vehicle is a total loss as forth in Section 24 above, and I am in compliance with my insurance obligations, the amount of any deductible and the proceeds of the settlement of the insurance claim you receive are the "Realized Value."

(*Id.*, ¶ 31.[1]) In the lease, ORG Holdings gave BMW of Westlake and its assignee Financial Services Vehicle Trust power of attorney to "act on my behalf in insurance matters relating to the Vehicle, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf." (*Id.*, ¶ 26, PageID #93.)

---

[1] This provision does not answer the question at the heart of this case for two reasons. First, by its terms, it applies to an early termination by the lessee (as provided in Section 30 of the lease). At this point, the record does not reflect that ORG Holdings terminated the lease early according to this provision. Indeed, where a total loss occurs, the lease gives BMW FS the right to terminate. Second, the total loss provision of Section 31 might be read to set the price at disposition of the vehicle at the amount of the insurance proceeds paid. Such a reading runs headlong into the provision of Section 25, which contemplates only a negative gap between the proceeds and the remainder of the lease—not an excess. Read together, the provisions in Section 31 and Section 25 address the same circumstance. In any event, it is axiomatic that a more specific provision controls over a more general one. Therefore, the total loss provision of Section 31 leaves open the same question as Section 25.

In BMW's filings with the Securities and Exchange Commission, the complaint alleges that the company makes statements regarding its vehicle lease trust, disclosing that excess insurance proceeds (those over and above what is owed on a lease) are refunded to lessees. (ECF No. 1-1, ¶ 16, PageID #14.) It points to one statement in particular, which reads in relevant part:

> if a user-lessee's vehicle is destroyed . . . as a result of . . . an accident . . . , BMW FS will accept the actual cash value paid by the user-lessee's insurance company as payment in full of the related Lease balance. . . . If the insurance loss proceeds exceed the user-lessee's Lease obligations, the excess is refunded to the user-lessee."

(*Id.*, ¶ 17.)

**STATEMENT OF THE CASE**

ORG Holdings filed a class action complaint against BMW FS in State court. (ECF No. 1-1, PageID #10.) Plaintiff asserts a claim for unjust enrichment, claiming that ORG Holdings had a right to the "excess insurance proceeds" in the amount of $16,735.66. (*Id.*, ¶ 64, PageID #23–24.) Defendant timely removed this action to federal court and then moved to compel arbitration, dismiss the case, or, alternatively, stay the case pending arbitration. (ECF No. 1, ¶ 7, PageID #3; ECF No. 3, PageID #39.) Specifically, BMW FS moved to compel arbitration pursuant to Rule 12(b)(6):

> The proper vehicle when requesting dismissal of a case in favor of arbitration is pursuant to Fed. R. Civ. P. 12(b)(6)." *Spurlock v. Carrolls LLC*, No. 20-cv-1038, 2021 WL 2823430, at *3 (S.D.Ohio July 7, 2021). Indeed, "[a] party's 'failure to pursue arbitration' in spite of a compulsory arbitration provision means that the party has failed to state a claim upon which relief can be granted." *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018).

(ECF No. 3, PageID #39 n.1.) Later, the Court determined that Defendant actually moved to compel arbitration pursuant to Rule 81(a)(6) directly under Section 3 of the Federal Arbitration Act. (ECF No. 50, PageID #586.)

On the plain language of the lease agreement, the Court determined that BMW FS did not have a right to invoke the arbitration clause because the lease made non-party Financial Services Vehicle Trust the assignee. (ECF No. 23, PageID #241.) Further, the Court held that BMW FS may not compel arbitration as an agent or affiliate or on a theory of equitable estoppel. (*Id.*, PageID #242–51.) On appeal, the Sixth Circuit affirmed. (ECF No. 26.) In doing so, it rejected each theory that BMW FS advanced to allow it to enforce the arbitration clause. (*Id.*, PageID #288.)

On remand from the Sixth Circuit, BMW FS moves to dismiss under Rule 12(b)(6). (ECF No. 31.) Defendant argues that Plaintiff may not maintain a claim for unjust enrichment because the lease and the insurance policy disallow ORG Holdings from proceeding on this theory. (*Id.*, PageID #328.) Also, BMW FS moves to dismiss under Rule 12(b)(7) for failure to join a necessary party under Rule 19—namely, Cincinnati Insurance and Financial Services Vehicle Trust, which insured the vehicle at issue. (*Id.*, PageID #340–47.)

Because Defendant supported its motion to dismiss with certain information outside the pleadings, the parties jointly sought a stay to allow discovery before closing briefing on the motion. (ECF No. 34.) At the initial case management conference, the Court ordered supplemental briefing, without discovery, on the procedural propriety of a second Rule 12 motion and indicated that it would set a

briefing schedule on the joinder issue at a later date. (ECF No. 38; Minutes, Dec. 10, 2025.) After the parties addressed the procedural issue, Financial Services Vehicle Trust moved to intervene under Rule 24. (ECF No. 42.)

**ANALYSIS**

In any civil action, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555, 557 n.5.

When analyzing a complaint under this standard, courts construe factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a pleading must offer more than mere "labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading

as factual allegations[.]" *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were "not well-pleaded[,]" "their conclusory nature 'disentitles them to the presumption of truth'"). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

## I. Motion to Intervene

Represented by the same counsel as BMW FS, Financial Services Vehicle Trust moves to intervene under Rule 24. (ECF No. 42.) It is an affiliate of BMW FS and, as the Court previously determined, the assignee on the lease between ORG Holdings and BMW of Westlake, the lessor. (ECF No. 23, PageID #241.) As the assignee, the lease gives Financial Services Vehicle Trust the right to arbitrate, and Financial Services Vehicle Trust makes clear that it seeks to intervene to compel arbitration. (ECF No. 42, PageID #508 n.3.)

On a motion to intervene, courts accept as true the non-conclusory allegations made in support of the motion, including declarations. *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819–20 (9th Cir. 2001) (collecting authorities). To support its motion, Financial Services Vehicle Trust submits the declaration of Erich

Ackley, an employee of BMW FS. (ECF No. 42-1.) In his declaration, Ackley attests that "[a]ll cash activities relating to FSVT leasing accounts (including [for the lease at issue]) flow through a bank account in the name of BMW FS, as the servicer for FSVT." (*Id.*, ¶ 6, PageID #512.) Accounting treatment for the lease, however, considers the lease part of Financial Services Vehicle Trust's portfolio. (*Id.*, ¶ 5; *see also id.*, ¶¶ 8 & 9, PageID #513.) Following termination of the lease, BMW FS informed ORG Holdings that it was eligible for a loyalty credit for the full value of the amount of the insurance overage toward the purchase or lease of another vehicle, and ORG Holdings received a credit in that amount. (*Id.*, ¶¶ 9 & 10, PageID #513.)

**I.A. Intervention as of Right**

Rule 24(a)(2) provides that a court must permit intervention as of right, on timely motion, to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movants ability to protects its interest, unless existing party accurately represent that interest." Fed. R. Civ. P. 24(a)(2).

In *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007), the Sixth Circuit identified four criteria that a party seeking intervention of right must satisfy: (1) the motion is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect its interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest. Rule 24 should be "broadly construed in favor of

potential intervenors." *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991). Also, the Sixth Circuit holds that "an intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing." *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005) (citation omitted). "The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).

As Financial Services Vehicle Trust notes, it moved to intervene after BMW FS responded to the complaint on remand from the Sixth Circuit, before a ruling on the motion to dismiss. No discovery has yet occurred. To determine the timeliness of a motion to intervene, courts consider the following factors:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Grubbs*, 870 F.2d at 345. Although this action has not yet progressed far, Financial Services Vehicle Trust seeks intervention for a purpose that the Court—and the Sixth Circuit—have already adjudicated. From the record, it is clear that Financial Services Vehicle Trust knew of its claimed interest in this case from the outset and could have sought to intervene when BMW FS moved to compel arbitration. On these

facts and circumstances, the Court finds that Financial Services Vehicle Trust's motion to intervene is not timely.

Additionally, without intervention, the interests of Financial Services Vehicle Trust will not be impaired, and BMW FS will adequately protect its interest. Regardless of the accounting treatment, the affidavit supporting the intervention motion shows that BMW FS has every incentive, perhaps greater incentives, than Financial Services Vehicle Trust to contest Plaintiff's claims. And the interests of BMW FS are aligned with those of its affiliate. To the extent they are not, the interests of Financial Services Vehicle Trust and those of BMW FS can be reconciled through intra-corporate actions without the need for litigation. As for impairment of its interests, Financial Services Vehicle Trust makes only a conclusory assertion without presenting evidence or developing an argument. For example, it points to no defense or argument that it has that BMW FS cannot or will not make on the merits of the litigation. By litigating the merits of this putative class action, BMW FS will adequately protect Financial Services Vehicle Trust's interests.

For all these reasons, even if Financial Services Vehicle Trust has a substantial legal interest in this case, the Court determines that Financial Services Vehicle Trust is not entitled to intervene as of right.

### I.B. Permissive Intervention

With respect to permissive intervention, a court may allow the intervention of any party who: (1) has a conditional right to intervene under federal statute; or (2) "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A)–(B). Again, the party seeking to intervene

bears the burden of establishing the necessary criteria. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989); *Meyer Goldberg, Inc. of Lorain v. Goldberg*, 717 F.2d 290, 293 (6th Cir. 1983).

In addition to suffering from the same timeliness defect, Financial Services Vehicle Trust's motion fails to establish the propriety of or need for permissive intervention under Rule 24(b). Contrary to its argument, Plaintiff does not seek to recover from Financial Services Vehicle Trust. Plaintiff seeks payment of the insurance proceeds in excess of the cash value of the totaled car. Defendant's declaration shows that this cash was paid to BMW FS. Although internal accounting within the BMW corporate family treats the entries as occurring on the books of Financial Services Vehicle Trust, Plaintiff is not interested in that accounting, and its adjudication does not determine any legal liability in this case. Because the issues to which Financial Services Vehicle Trust points are ones that the Court need not litigate, it fails to establish the procedural prerequisites for permissible intervention.

* * *

Therefore, the Court **DENIES** Financial Services Vehicle Trust's motion to intervene.

## II. Failure to Join Cincinnati Insurance and FSVT

A court must determine the indispensability of absent parties before ruling on the merits of a case. *See Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1348 (6th Cir. 1993) (citing *Tankersley v. Albright*, 514 F.2d 956, 966 (7th Cir. 1975)). Under Rule 12(b)(7), a party may move to dismiss for "failure to join a party under Rule 19." Rule 19 requires joinder of a party if, in that party's absence, the

court cannot complete relief among the parties. Fed. R. Civ. P. 19(a)(1)(A). Alternatively, joinder is required where a person claims an interest in the litigation and its absence will impede the protection of that interest or create a risk of multiple or competing obligations. Fed. R. Civ. P. 19(a)(1)(B). As with a motion to dismiss under Rule 12(b)(6), the court accepts a plaintiff's allegations as true and draws all reasonable inferences in its favor. *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 465 (D.C. Cir. 2017) (citing *Paiute-Shoshone Indians of the Bishop Cmty. v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011)).

Under the law of this Circuit, analysis of dismissal for failure to join an indispensable party proceeds in three steps. *Keweenaw Bay Indian Cmty.*, 11 F.3d at 1345 (citations omitted). First, the court determines whether a person is necessary to the action and should be joined if possible. *Id.*; Fed. R. Civ. P. 19 (a). In the absence of such a party, the analysis is at an end, and the case may proceed. *Keweenaw Bay Indian Cmty.*, 11 F.3d at 1345. If a person is indispensable, then the court considers issues of personal jurisdiction and indispensability. *Id.*

In this case, the analysis begins and ends at step one: neither Cincinnati Insurance nor Financial Services Vehicle Trust are indispensable parties. As already discussed, the Court can provide complete relief between ORG Holdings and BMW FS without the presence of Financial Services Vehicle Trust in this litigation. Defendant concedes that BMW FS holds the funds at issue. (ECF No. 31, PageID #343.) This litigation involves a claim to those proceeds. Plaintiff asserts no claim against Financial Services Vehicle Trust, and its absence from this litigation will not impede

or impair any interest it claims because its interest, if any, is wholly a function of internal corporate relationships and intra-corporate accounting, which are outlined in the declaration it submits in support of its motion. (ECF No. 31-1.) Resolution of the dispute between ORG Holdings and BMW FS will not subject Financial Services Vehicle Trust to multiple or competing legal obligations. Indeed, throughout its briefs, Defendant argues that there is no difference between BMW FS and Financial Services Vehicle Trust (*see, e.g.*, ECF No. 31, PageID #335 n.3), and each is aligned in seeking the same substantive resolution to this matter. So it is difficult to see how the presence of Financial Services Vehicle Trust in this action is necessary.

Cincinnati Insurance is even more remote from this litigation. It paid the insurance proceeds upon the total loss according to the terms of the insurance policy at issue. It has no other interest in this litigation. Its absence does not preclude the Court from affording complete relief to the parties, and whatever the outcome of the case on the merits Cincinnati Insurance is not at risk of multiple or competing legal obligations.

For these reasons, the Court concludes that dismissal under Rule 12(b)(7) is not appropriate and **DENIES** Defendant's motion on this ground.

## III. BMW FS's Motion to Dismiss

Before turning to the merits of Defendant's motion to dismiss, the Court addresses two procedural issues.

## III.A. Procedural Issues

### III.A.1. Matters Outside the Pleadings

On a motion under Rule 12(b)(6), the Court's inquiry is limited to the content of the complaint, although it may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). Defendant supports its latest motion to dismiss with the declaration of an employee of BMW FS, which details certain inner workings of the company. (ECF No. 31-1.) Recognizing that the declaration presents matters not proper for consideration on a Rule 12 motion, the parties agreed to discovery. (ECF No. 34.)

But the Court declines to convert the pending Rule 12 motion (whether treated as one under Rule 12(b)(6) or Rule 12(c)) into one under Rule 56. *See* Fed. R. Civ. P. 12(d). Doing so properly sequences the procedures in the case for the benefit and protection of the parties. That is, assuming Plaintiff states a claim for unjust enrichment, the next proper step in the proceedings is class certification. Under Rule 23(b)(3), any potential class members must decide whether to opt out before the Court makes a dispositive ruling—for obvious reasons. Because the declaration includes facts that go beyond the pleadings, are not integral to the complaint, and are not matters of public record, the Court disregards it in resolving the motion to dismiss. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

Also attached to the motion is a copy of the lease agreement at issue. (ECF No. 31-2.) That document is integral to the complaint because it defines the legal relationship between the parties. Therefore, the law permits its consideration at the

pleading stage, *see Amini*, 259 F.3d at 502, and the Court considers it without converting the motion to one for summary judgment.

**III.A.2. Judicial Notice**

Defendant asks the Court to take judicial notice of a petition to confirm an arbitral award that it filed in State court in California in the matter of *Connor v. BMW of North America, LLC*, Case No. CPF-25-519303. (ECF No. 31-3; ECF No. 31-4.) Plaintiff did not oppose the request. Because the motion requests that the Court consider authority of the type that courts typically consider, and could if it were reported or otherwise publicly available, the Court **GRANTS** the motion for judicial notice.

**III.B. Unjust Enrichment**

"Unjust enrichment is an equitable doctrine" that "prevent[s] a party from retaining money or benefits that in justice and equity belong to another." *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (quoting *Beatley v. Beatley*, 160 Ohio App. 3d 600, 2005-Ohio-1846, 828 N.E.2d 180, ¶ 61). To plead and prove a claim for unjust enrichment, a plaintiff must show: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Id.* (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298 (1984)). The purpose of the doctrine "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." *Johnson v. Microsoft Corp.*,

106 Ohio St. 3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 21 (quoting *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335, 123 N.E.2d 393 (1954)).

**III.B.1. Express Contracts**

Because unjust enrichment is "equitable" or "quasi-contractual," "[i]f a contract covers the transaction at issue, the plaintiff does not need equity; he finds his remedy in the contract." *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 678 (6th Cir. 2017) (applying Ohio law). Consistent with this principle, Defendant argues that two contracts cover the transaction such that ORG Holdings may not maintain a claim for unjust enrichment: the lease agreement itself and the insurance policy that ORG Holdings obtained from Cincinnati Insurance. (ECF No. 31, PageID #333.) But those contracts are not between ORG Holdings and BMW FS. Indeed, the record shows that there is no contract between them. In any event, the lease addresses how to handle a gap between insurance proceeds and the amount due, but it does not speak to the circumstances at issue where there is an excess of insurance proceeds.

Although Defendant argues that the Cincinnati Insurance policy also provides an express contract covering the terms at issue, it did not place the policy at issue in the record. Its terms are not even alleged in the pleadings. Accordingly, the Court has no way to evaluate the merits of this argument. In any event, the instrument that governs disposition of insurance proceeds between ORG Holdings and Financial Services Vehicle Trust is the lease. It governs the substance of the insurance as relevant here. For example, it dictates how much insurance and what types ORG Holdings must have, requires listing Financial Services Vehicle Trust as an additional insured, and directs payment of insurance proceeds in the event of a claim

to Financial Services Vehicle Trust. (*See* ECF No. 3-3, ¶ 20, PageID #92–93.) In that respect, the insurance policy itself does not bar a claim for unjust enrichment against BMW FS in its own right.

To the extent Defendant contends the lease covers the transaction at issue, Ohio law requires a "meeting of the minds" to the essential terms for a contract to be enforceable. *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶¶ 16–17. The essential terms of the agreement must be "reasonably certain and clear" and mutually understood by the parties. *Id.* (quoting *Rulli v. Fan Co.*, 79 Ohio St. 3d 374, 376, 1997- Ohio 380, 683 N.E.2d 337.) As the Ohio Supreme Court explained:

> A court cannot enforce a contract unless it can determine what it is. . . . [The parties] must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are.

*Rulli*, 79 Ohio St.3d at 376 (quoting 1 *Corbin on Contracts*, Section 4.1, at 525 (Rev.Ed.1993)). The party who claims the existence of a contract bears the burden of pleading and proving it. *Turoczy Bonding Co. v. Mitchell*, 2018-Ohio-3173, ¶ 19 (Ohio Ct. App.) (citing *Nilavar v. Osborn*, 127 Ohio App. 3d 1, 11, 711 N.E.2d 726). At this stage of the proceedings, without a more developed record, the Court cannot say that Defendant has carried its burden of pointing to a contract covering the transaction at issue.

**III.B.2. Benefit Conferred**

Defendant argues that ORG Holdings did not confer a benefit on BMW FS. But ORG Holdings maintained insurance on the vehicle, which protected its interests secured through the lease but also those of BMW FS in preserving the value the vehicle it ultimately owned. In this way, ORG Holdings provided a benefit to BMW FS, and Ohio law recognizes in various contexts that maintaining insurance constitutes a benefit for purposes of a claim for unjust enrichment. *See, e.g.*, *Hummel v. Hummel*, 133 Ohio St. 520, 529, 14 N.E.2d 923, 927 (1938); *Duff v. Centene Corp.*, 565 F. Supp. 3d 1004, 1029 (S.D. Ohio 2021). Without question, BMW FS knew that it retained the insurance proceeds at issue. It makes no argument to the contrary. Therefore, Plaintiff pleads the first two elements of an unjust enrichment claim.

**III.B.3. Retention of the Benefit in Unjust Circumstances**

Where Plaintiff's case falters is on the third element of its claim. As a matter of law, the Court cannot say that allowing BMW FS to retain the insurance proceeds at issue (those in excess of the loss) is unjust. After all, ORG Holdings does not own the vehicle at issue. It leased it. And the excess insurance proceeds in dispute represent an equity or ownership interest in the vehicle. But at the end of the lease, ORG Holdings had no right to any such amount. Indeed, the general point of a lease is for the lessee to pay only for its use of the property at issue (depreciation of an automobile, for example), leaving the other burdens of ownership to the lessor. That economic arrangement, in the absence of a contractual agreement to the contrary, does not make it unjust for BMW FS to retain the insurance proceeds at issue in this case.

Basic principles of Ohio law support this economic analysis. "The longstanding rule is that the equitable owner of the estate bears all risks but enjoys all benefits that may accrue." *Allason v. Gailey*, 189 Ohio App. 3d 491, 2010-Ohio-4952, 939 N.E.2d 206, ¶ 47 (citations omitted). That is, in the absence of a contractual allocation of excess insurance proceeds, Ohio law treats such proceeds as property of the owner, not a lessee. Although specific cases on point are difficult to locate, making this a difficult question, Ohio Jurisprudence summarizes the key distinction in the law as turning on whether (1) the lessee has an option to purchase, such that the insurance benefits the lessee by protecting that right, or (2) the parties agreed to repair the property at issue. 59 Oh. Jur. 3d Insurance § 1205.

The cases on which Plaintiff relies bear out this distinction. For example, in *Dodson v Maines*, 2012-Ohio-2548 (Ohio Ct. App.), two parents purchased a home for their daughter and grandchildren but retained title. They had an unwritten agreement for the daughter to pay the mortgage, which the parents took out in their names, and other expenses, including insurance, until the daughter was able to obtain credit in her own name. Also, she had an option to purchase the property from her parents. After a fire destroyed the structure, the parties litigated over the excess insurance proceeds. On a claim for unjust enrichment, the Ohio courts awarded them to the daughter, who expended funds in anticipation of rebuilding her home, which she retained an option to purchase. *Id.* at ¶¶ 29–34.

Defendant relies on *Kumar v. Ally Financial, Inc.,* No. 2:22-cv-05184, 2022 WL 16962283, at *3 (C.D. Cal. Oct. 17, 2022). But the contract at issue there specifically

addressed how to allocate excess insurance proceeds, so Defendant should know better than to cite it. Its other cases come from California, not Ohio, limiting any persuasive value they might have.

Although ORG Holdings had an option to purchase the vehicle, it did not exercise that right. To the extent its maintenance of insurance protected its interests, including the right to purchase the vehicle, the lease squarely protects ORG Holdings and compensates it for that value. The lease disposes of the remaining interest of ORG Holdings following the total loss by relieving it of any obligation to make payments. In other words, the total loss definitively ends ORG Holdings' interests in the vehicle and simultaneously relieves it of its contractual obligation to pay for those benefits. At that point, ORG Holdings had no more interest in the lease, making it not unjust under the circumstances for BMW FS, the owner of the vehicle under the lease, to retain the excess insurance proceeds. "A loss payee's interest in proceeds is protected no more or less than the loss payee's interest in the insured property." *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 152 F.4th 768, 781 (6th Cir. 2025).

## IV. Amendment

Near the end of its opposition, Plaintiff requests the opportunity to amend but does not attach a proposed amendment or otherwise indicate what allegations it might seek to amend. Specifically, "[i]f the Court concludes that any aspect of the Complaint is factually deficient, Plaintiff respectfully requests leave to amend to cure that deficiency." (ECF No. 51, PageID #616.) This request fails for two reasons. First, the complaint is not factually deficient in any way. In the present procedural

posture, the Court's analysis construes the allegations in Plaintiff's favor. As a matter of law, the Court determines that it fails to state a claim for unjust enrichment.

Second, although Rule 15 generally directs a court to give leave to amend freely, Fed. R. Civ. P. 15(a)(2), perfunctory amendment requests at the end of a brief are inadequate. *See Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 305 (6th Cir. 2011); *see also Alexander v. Eagle Mfg. Co.*, 714 F. App'x 504, 511 (6th Cir. 2017) ("[A] request for leave to amend, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is not a motion to amend.") (cleaned up). In any event, any amendment at this point would have the effect of rendering this decision advisory.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Financial Services Vehicle Trust's motion to intervene (ECF No. 42), **GRANTS** the motion for judicial notice (ECF No. 31-3), and **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss (ECF No. 31).

**SO ORDERED.**

Dated: September 9, 2026



J. Philip Calabrese
United States District Judge
Northern District of Ohio